HON. RICHARD A. JONES

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11 | PUGET SOUNDKEEPER ALLIANCE,          )
                                                                )   Case No. 14-cv-00803-RAJ
12 |     Plaintiff,                                           )
                                                                )   CONSENT DECREE
13 |         v.                                                )
                                                                )
14 | LOUIS DREYFUS COMMODITIES LLC;   )
15 | LOUIS DREYFUS COMMODITIES NA      )
     LLC; LOUIS DREYFUS LLC; LDC           )
16 | WASHINGTON LLC; LD                           )
     COMMODITIES SEATTLE EXPORT        )
17 | ELEVATOR LLC,                                    )
18 |                                                              )
         Defendants.                                       )
19 | _____ )
20

WHEREAS, Plaintiff PUGET SOUNDKEEPER ALLIANCE ("Soundkeeper" or

21

"Plaintiff") filed a Second Amended Complaint against Defendants LOUIS DREYFUS

22

COMMODITIES LLC, LOUIS DREYFUS COMMODITIES NA LLC, LOUIS DREYFUS

23

LLC, LDC WASHINGTON LLC, and LD COMMODITIES SEATTLE EXPORT ELEVATOR

24

LLC (collectively referred to herein as "Defendants")[1] alleging violations of the Clean Water

25
26
27

---

[1] In March 2016, Louis Dreyfus LLC changed its name to Louis Dreyfus US LLC; LDC Commodities Seattle
Export Elevator LLC changed its name to Louis Dreyfus Company Seattle Export Elevator LLC; LDC Washington
LLC changed its name to Louis Dreyfus Company Washington LLC; Louis Dreyfus Commodities LLC changed its

CONSENT DECREE - 1
No. 14-cv-00803-RAJ

Act, 33 U.S.C. § 1251 *et seq.,* relating to discharges of grain, grain dust, wash water and stormwater from Defendants' grain elevator and export facility located at Pier 86 in Seattle, Washington (hereafter the "Facility"), seeking declaratory and injunctive relief, civil penalties and attorney's fees and costs;

WHEREAS, counsel and representatives for the parties to this action have engaged in discussions relating to the potential settlement of this litigation;

WHEREAS, Plaintiff and Defendants agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action; and

WHEREAS, Plaintiff and Defendants, by their authorized counsel and without trial or final adjudication of the issues of fact or law with respect to Plaintiff's claims or allegations that remain undecided, consent to the entry of this Consent Decree in order to avoid the risks of litigation and to resolve the controversy between them;

NOW, THEREFORE, without trial of any issue of fact or law, and upon consent of the parties, and upon consideration of the mutual promises herein contained, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1.     This Court has jurisdiction over the parties and subject matter of this action for purposes of this Consent Decree.

2.     The undersigned representative for each party certifies that he or she is fully authorized by the party or parties whom he or she represents to enter into the terms and conditions of this Consent Decree and to legally bind the party or parties, their successors in

---

name to Louis Dreyfus Company LLC; and Louis Dreyfus Commodities NA LLC changed its name to Louis Dreyfus Company NA LLC. Except for Louis Dreyfus Company Washington LLC, where referred to individually in this Consent Decree, these companies are referred to by their former names.

CONSENT DECREE - 2
No. 14-cv-00803-RAJ

interest and assigns of the parties to it.

3.     This Consent Decree shall apply to, and be binding upon, the parties, and upon the successors in interest and assigns of the parties.

4.     This Consent Decree shall apply to operation by the lessee and/or oversight of the Facility located at or about Pier 86, 955 Alaskan Way W, Seattle, WA 98119 and to Louis Dreyfus Company Washington LLC in its role as lessee.

5.     This Consent Decree constitutes a full and complete settlement of the claims alleged in the Second Amended Complaint and all other claims, known and unknown, existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operations of the Facility identified in paragraph 4 of this Consent Decree.

6.     This Consent Decree shall not constitute evidence in any proceeding, an admission or adjudication with respect to any allegation of the Second Amended Complaint, any fact or conclusion of law with respect to any matter alleged in or arising out of the Second Amended Complaint, or the admission or evidence of any wrongdoing or misconduct on the part of the Defendants, its successor or assigns.

7.     The parties agree that the obligations undertaken under Paragraphs 8, 9, and 10 are in full and complete satisfaction of the claims covered by the Second Amended Complaint and all other claims covered by this Consent Decree, as described in Paragraph 5.

8.     Injunctive Relief:

a.   Louis Dreyfus Company Washington LLC will comply fully with the terms and provision of the Industrial Stormwater General Permit at the facility and any successor, modified, or replacement permit.

CONSENT DECREE - 3
No. 14-cv-00803-RAJ

b.   By September 30, 2017, Louis Dreyfus Company Washington LLC must modify the access pier and shipping pier to collect, manage, and convey all stormwater from its surface to an upland area of the facility for infiltration in accordance with the design submitted to Ecology, unless infiltration is technologically infeasible, is disapproved by Ecology or if the soil contamination investigation detailed below identifies contaminated soils at the selected infiltration area. By this date, Louis Dreyfus Company Washington LLC must also prepare the upland infiltration site to ensure, consistent with the Stormwater Management Manual for Western Washington, it is capable of infiltrating the two piers' stormwater, in addition to any other stormwater falling in the site's upland drainage area. Before commencing any infiltration site work, Louis Dreyfus Company Washington LLC must investigate whether hydraulic or other oils released in the rail yard have affected soil and/or groundwater in the infiltration area at concentrations exceeding regulatory criteria, produce a written report documenting the investigation and its results, and immediately provide a copy to Soundkeeper.  If contaminated soils or groundwater are found at levels exceeding applicable criteria in the infiltration area, if infiltration of stormwater from the piers is technologically infeasible, or if infiltration is disapproved by Ecology, Louis Dreyfus Company Washington LLC will convey the piers' stormwater to sanitary sewer.  These pier modifications will include an impervious curb or other permanent barrier around the perimeter of the piers to capture stormwater and spilled grain on the pier.

c.   Until the pier modifications described above are complete, Louis Dreyfus Company Washington LLC must use a vacuum sweeper, capable of picking up particles down to the 10 micrometer size, on the piers by the next working day shift following the completion of loading of each vessel. After the pier modifications described above are complete, Louis

CONSENT DECREE - 4
No. 14-cv-00803-RAJ

Dreyfus Company Washington LLC will clean up grain spilled onto the pier if, in its judgment, such action is needed to prevent wind from blowing grain into Elliott Bay.

d.   Louis Dreyfus Company Washington LLC will modify the grain conveyance system and operating procedures at Pier 86 to prevent discharges of grain to Elliott Bay as specified below. If these modifications are insufficient to prevent discharges of grain from Pier 86 to Elliott Bay, Louis Dreyfus Company Washington LLC will evaluate whether additional modifications are necessary and if, in its judgment, they are, will undertake such modifications.  If the modifications require engineering, Louis Dreyfus Company Washington LLC will undertake such modifications in consultation with River Consulting or another qualified engineer.:

i.   Within 30 days after entry of the Consent Decree, Louis Dreyfus Company Washington LLC will install one diagonal rubber belt plow on each of the return belts of Conveyors 14 and 15 between the shipping gallery and Tower 6.  In addition, a limit switch will be installed next to each diagonal rubber belt plow approximately 1½ inches above the return belt and programmed to shut off the belt if contact with grain or other solid material on the belt triggers the actuator on the limit switch.  In the event a limit switch is activated and a conveyor belt is shut off, Louis Dreyfus Company Washington LLC will visually inspect the belt(s) and remove any grain or grain dust that, in its judgment, could fall out of the grain conveyance system when the belt is restarted.

ii.   Within 60 days after entry of the Consent Decree, Louis Dreyfus Company Washington LLC will inspect the floor under and walls surrounding Conveyors 14, 15, 16, and 17, beginning at the point where Conveyors 14 and 15 pass over the gate between Centennial Park and the access pier, and continuing through to the southern end of the shipping

gallery. Louis Dreyfus Company Washington LLC will (1) fill any openings in the concrete floor under the conveyor system that are ¼-inch or larger in diameter, except for any opening that is part of the original or modified design or construction of the facility, such as the take-up at Tower 6; (2) close any gaps of ¼-inch or more between the metal siding of the housing and the concrete floor under the conveyor system; and (3) cover with steel plating the expansion joint at the shoreline support tower for the transfer gallery. Louis Dreyfus Company Washington LLC will repeat this process quarterly.

          iii.    Within 90 days after entry of the Consent Decree, Louis Dreyfus Company Washington LLC will install limit switches at the pivot point on each of the five loading spouts at the grain terminal. The limit switches on each of the five loading spouts will be programmed to shut off conveyor belts delivering grain to the loading spout on which the limit switches are installed when the angle of the spout is less than 35 degrees from horizontal. In addition, Louis Dreyfus Company Washington LLC will install a limit switch on the loading spout on Tower 1 that is programmed to prevent movement of the end of the spout during vessel loading over the area within the angle formed by the intersection of two lines. The first line is defined by two points: (1) the pivot point of the loading spout on Tower 1, and (2) the point at which the loading spout on Tower 1 would, when moved while fully extended, cross a line running parallel to the western edge of the shipping pier and commencing at the intersection of the shipping pier and the access pier. The second line runs parallel to the western edge of the access pier, commencing at the intersection of the shipping pier and the access pier. Louis Dreyfus Company Washington LLC also will install a limit switch on the loading spout on Tower 5 that is programmed to prevent movement of the end of the spout during vessel loading over the area within the angle formed by the intersection of two lines. The first line is defined by

CONSENT DECREE - 6
No. 14-cv-00803-RAJ

two points: (1) the pivot point of the loading spout on Tower 5, and (2) the point at which the loading spout on Tower 5 would, when moved while fully extended, cross a line running parallel to the western edge of the shipping pier and commencing at the intersection of the shipping pier and the access pier. The second line runs parallel to the southern finger pier, commencing at the intersection of the shipping pier and the southern finger pier. Louis Dreyfus Company Washington LLC may manually override the limit switches, on a case by case basis, when it is necessary for purposes of maintenance or uncommon operational circumstances. In the event a limit switch is activated and a conveyor belt is shut off, Louis Dreyfus Company Washington LLC will not restart the corresponding conveyor belt(s) if the loading spout(s) are not over a vessel.

     iv.  Within six months after the Corps of Engineers issues a permit authorizing such work, Louis Dreyfus Company Washington LLC will cover the grating on the west side of the shipping pier with a solid surface. The solid surface will extend a minimum of two inches onto the existing solid surface on the shipping pier and will be sloped to promote drainage toward the eastern edge of the shipping pier. Louis Dreyfus Company Washington LLC will, within 30 days after entry of the Consent Decree, apply for permits and other necessary approvals for this work. Louis Dreyfus Company Washington LLC will act diligently and in good faith to secure the necessary permits for this work, and promptly respond to any concerns raised by a permitting authority. Louis Dreyfus Company Washington LLC will promptly provide copies of all permit application documents as filed and correspondence with permitting authorities to Soundkeeper.

     v.  Within six (6) months of completion of the work described in paragraph 8(d), *et seq.*, Louis Dreyfus Company Washington LLC will permit a representative of

CONSENT DECREE - 7
No. 14-cv-00803-RAJ

Plaintiff onto the Facility to observe the implemented modifications. Louis Dreyfus Company Washington LLC will provide a demonstration for Soundkeeper of each limit switch and rubber belt plow functioning. Louis Dreyfus Company Washington LLC will pay $2,000 to Smith & Lowney PLLC's trust account for this process. This visit will be coordinated in advance with Louis Dreyfus Company Washington LLC's counsel of record. For the purposes of this coordination, Plaintiff will contact Stephen Tan either by email at stan@cascadialaw.com or by phone at 206-292-2657. Louis Dreyfus Company Washington LLC agrees to accommodate Plaintiff's proposal for the time of this visit where reasonable. Soundkeeper's representative must comply with applicable Visitor Policies while at the Facility.

e.   Unless Louis Dreyfus Company Washington LLC decides not to infiltrate for any of the reasons stated in Paragraph 8(b), Louis Dreyfus Company Washington LLC will demonstrate to Soundkeeper that the drainage basins that drain to Catch Basin 2 and Catch Basin 3 infiltrate runoff at the rate of the design storm specified in the Stormwater Management Manual for Western Washington. If Louis Dreyfus Company Washington LLC is unable to make this demonstration, it will further reduce the potential for discharge as necessary so that both drainage basins meet this standard. If Louis Dreyfus Company Washington LLC installs an Underground Injection Control well to enhance infiltration, it will comply with applicable requirements of WAC 173-218.

f.   Louis Dreyfus Company Washington LLC must inform all employees, contractors, and stevedores with any role on the piers about the prohibition on washing, pushing, or discarding grain and grain dust into Elliott Bay and the consequences for violating it before they begin work on the piers. Louis Dreyfus Company Washington LLC will immediately order work stopped if discharges of grain are observed, either in-person or on security cameras.

CONSENT DECREE - 8
No. 14-cv-00803-RAJ

1
2
3
4
5
6

g.   Louis Dreyfus Company Washington LLC must develop and implement a "bird control plan" in consultation with a qualified consultant that identifies additional methods to prevent birds from feeding/nesting/roosting on the piers and to prevent bacterial contamination from bird waste.  Louis Dreyfus Company Washington LLC will incorporate the contents of the bird control plan into the facility's SWPPP.

7
8
9
10
11
12
13

h.   Louis Dreyfus Company Washington LLC must develop and implement a "grain spill prevention plan" in consultation with its consultant, Maul Foster Alongi, that identifies additional methods to prevent grain or grain dust spills at the Facility and to prevent grain or grain dust from reaching Elliott Bay from any part of the Facility.  Louis Dreyfus Company Washington LLC will incorporate the contents of the grain spill prevention plan into the facility's SWPPP.

14
15
16
17

i.   Within 60 days of entry of the consent decree, Louis Dreyfus Company Washington LLC must provide Soundkeeper with a copy of its updated SWPPP, "grain spill prevention plan" and "bird control plan" (collectively "the plans").

18
19
20
21
22
23
24
25
26

i.   Soundkeeper and its own consultant will have 30 days from receipt of the updated SWPPP and the plans to review and comment on the facility's latest SWPPP and the other plans ("comment period").  Soundkeeper's comment period may be extended by mutual agreement, and Louis Dreyfus Company Washington LLC will agree to any reasonable request for an extension, including but not limited to a request due to the unavailability of Soundkeeper's consultant.  Louis Dreyfus Company Washington LLC must pay for Soundkeeper's consultant fees in the amount of $3,000 for this process.

27
28

ii.   If Soundkeeper's consultant identifies reasonable and effective improvements to the plans, Louis Dreyfus Company Washington LLC will consider these

29

CONSENT DECREE - 9
No. 14-cv-00803-RAJ

1    improvements for possible implementation at the facility, and provide a written response to

2    Soundkeeper's consultant's suggested improvements no later than thirty days after receipt.  If

3    Louis Dreyfus Company Washington LLC does not agree that the suggested improvements

4    should be implemented, Louis Dreyfus Company Washington LLC's response shall describe the

5    reasons for its decision.

6

7                  iii.    Louis Dreyfus Company Washington LLC will incorporate the

8    contents of the bird control plan and grain spill prevention plan into the facility's SWPPP.  The

9    excerpts from Section 8 of this consent decree attached hereto as **Attachment B** shall be made

10   an appendix to the facility's SWPPP.  In addition, Louis Dreyfus Company Washington LLC

11   will incorporate the provisions of **Attachment C** into the facility's SWPPP following completion

12   of the triggering events specified in that attachment.

13

14                  j.    For a period of three years, Louis Dreyfus Company Washington LLC will

15   forward to Soundkeeper copies of all communications to or from the Department of Ecology

16   related to its ISGP coverage, stormwater discharges from the facility, or illicit/unpermitted

17   discharges from the facility.

18

19                  k.  Plaintiff acknowledges that the work required by this Paragraph 8 may be

20   subject to local, state, and federal permitting requirements.  Plaintiff also acknowledges that

21   facility modifications are subject to approval from the Port of Seattle (the "lessor"), which owns

22   Pier 86.

23

24         9.     Payment in Lieu of Penalty: Within seven (7) days of entry of this Consent

25   Decree by the Court, Louis Dreyfus Company Washington LLC shall make a payment in the

26   amount of Six Hundred and Ninety-Nine Thousand Dollars ($699,000) to the Rose Foundation

27   for Communities and the Environment – Puget Sound Stewardship and Mitigation Fund ("Rose

CONSENT DECREE - 10
No. 14-cv-00803-RAJ

Foundation"), as described in **Attachment A** to this Consent Decree.  Checks will be made to the order of and delivered to: The Rose Foundation, 1970 Broadway, Suite 600, Oakland, CA 94612. Payment will include the following reference in a cover letter or on the check: "Consent Decree, Puget Soundkeeper Alliance v. Louis Dreyfus, Clean Water Act Settlement."  Defendants agree to provide a copy of the check and cover letter, if any, to Plaintiff.

10.    Costs of Litigation.  Within seven (7) days of entry of this Consent Decree, Louis Dreyfus Company Washington LLC shall pay Plaintiff's actual litigation fees, expenses and costs (including reasonable attorney and expert witness fees) incurred in this matter in the amount of Four Hundred and Three Thousand Dollars ($403,000), of which Five Thousand Dollars ($5,000) of that amount is for full and complete satisfaction of payment pursuant to paragraph 8(d)(v) and 8(i)(i) of this Consent Decree.  Checks will be made to the order of and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, Attn:  Knoll Lowney.  Defendants' payments shall be in full and complete satisfaction of any claims Plaintiff has or may, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in this litigation.  As a condition precedent of the payment required under this paragraph, Plaintiff's counsel will provide a sworn affidavit that their contemporaneous time records of fees and costs exceed the $398,000.

11.    A "force majeure" event is any event outside the reasonable control of Defendants that prevents or causes a delay in performing tasks required by this decree that cannot be cured by due diligence.  Prevention or delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that (a) Louis Dreyfus Company Washington LLC notifies Plaintiff of the event, the steps that Louis Dreyfus Company Washington LLC will take to perform the task, the projected time that will be

CONSENT DECREE - 11
No. 14-cv-00803-RAJ

needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task; or (b), if the force majeure event is delay in issuance of a permit or other approval from any local, state, or federal government, the lessor at Pier 86, or any other person that is necessary to complete work described in Paragraph 8, Louis Dreyfus Company Washington LLC notifies Plaintiff of the event and provides any available information regarding when the permit or other approval may be issued; or (c) if the force majeure event is denial of a permit or other approval from any local, state, or federal government, the lessor at Pier 86, or any other person that is necessary to complete work described in Paragraph 8, Louis Dreyfus Company Washington LLC notifies Plaintiff of the event and engages with Plaintiff in good-faith negotiations to address the denial. If a force majeure event prevents implementation of any of the injunctive relief identified above, Louis Dreyfus Company Washington LLC and Soundkeeper will negotiate in good faith to agree to an alternative action with the same goal and effect of the action prevented by the force majeure event.

Louis Dreyfus Company Washington LLC will notify Plaintiff of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

    a) Acts of God, war, insurrection, or civil disturbance;

    b) Earthquakes, landslides, fire, floods;

    c) Actions or inactions of third parties, including permitting authorities or the lessor at Pier 86, over which Defendants have no control;

d)  Unusually adverse weather conditions;

e)  Restraint by court order or order of public authority;

f)  Strikes; and

g)  Litigation, arbitration, or mediation that causes delay.

12.     The Court shall retain jurisdiction over this matter and allow this case to be reopened without filing fee for the purpose of enabling the parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance, and/or resolve any dispute regarding the terms or conditions of this Consent Decree until termination of the Consent Decree pursuant to paragraph 14.  In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties shall first attempt to informally resolve the dispute through meetings between the parties by serving written notice of dispute and request for resolution to the parties and their counsel of record.  If no resolution is reached within ninety (90) days from the date that the notice of dispute is served, the parties may resolve the dispute by filing motions with the Court.

13.     The parties recognize that no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the United States Attorney General and the Administrator of the United States Environmental Protection Agency pursuant to 33 U.S.C. § 1365(c)(3).  Therefore, upon the signing of this Consent Decree by the parties, Plaintiff shall serve copies of it upon the Administrator of the United States Environmental Protection Agency and the United States Attorney General.

14.     This Consent Decree shall take effect on the date it is entered by the Court.  This Consent Decree shall terminate three (3) years following entry of the Consent Decree.

CONSENT DECREE - 13
No. 14-cv-00803-RAJ

1   15.   This Consent Decree may be modified only upon the written consent of the

2   parties and the approval of the Court.

3   16.   If for any reason the Court should decline to approve this Consent Decree in the

4   form presented, the parties agree to continue negotiations in good faith in an attempt to cure any

5   objection raised by the Court to entry of this Consent Decree.

6

7   17.   All communications between the parties shall be through legal counsel.

8   Notifications or copies required by this Consent Decree to be made to Plaintiff shall be delivered

9   electronically to:

10

11   Puget Soundkeeper Alliance
    Attn: Katelyn Kinn
12   130 Nickerson Street, #107
    Seattle, WA 98109
13   E-mail: katelyn@pugetsoundkeeper.org

14

15   Notifications required by this Consent Decree to be made to Defendants shall be mailed

16   to:

17   Cornelius J. Grealy
18   Louis Dreyfus Company LLC
    40 Danbury Road
19   Wilton, CT 06897
    E-mail: neil.grealy@ldcom.com
20

21   With a copy to:

22   Stephen Tan
23   Cascadia Law Group PLLC
    1201 Third Avenue, Suite 320
24   Seattle, WA 98101
    E-mail: stan@cascadialaw.com
25

26

27   18.   The parties agree that the Confidentiality Agreement between the parties dated

28   September 17, 2015 shall apply to any Confidential Information (as that term is defined in the

29

CONSENT DECREE - 14
No. 14-cv-00803-RAJ

1   Confidentiality Agreement) provided to Plaintiff pursuant to this Consent Decree, and so

2   designated. ( DKt. #75. )

3

4         Dated and entered this 22nd day of September, 2016.

5

6

7                                         *Richard A Jones*

8

9                                         The Honorable Richard A. Jones
                                          United States District Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

CONSENT DECREE - 15
No. 14-cv-00803-RAJ

PUGET SOUNDKEEPER ALLIANCE

Signature: _____

Title: _____

Dated: _____

LOUIS DREYFUS COMPANY LLC
fka LOUIS DREYFUS COMMODITIES LLC

Signature: _____

Title: _____

Dated: _____

LOUIS DREYFUS COMPANY NA LLC
fka LOUIS DREYFUS COMMODITIES NA LLC

Signature: _____

Title: _____

Dated: _____

LOUIS DREYFUS US LLC
fka LOUIS DREYFUS LLC

Signature: _____
            David Smith
Title: Vice President - Tax

Dated: July 13, 2016

CONSENT DECREE - 16
No. 14-cv-00803-RAJ

PUGET SOUNDKEEPER ALLIANCE

Signature: _____

Title: _____

Dated: _____

LOUIS DREYFUS COMPANY LLC
fka LOUIS DREYFUS COMMODITIES LLC

Signature: _____

Title: _Vice President_

Dated: _4/13/2016_

LOUIS DREYFUS COMPANY NA LLC
fka LOUIS DREYFUS COMMODITIES NA LLC

Signature: _____

Title: _Executive Vice President_

Dated: _4/13/2016_

LOUIS DREYFUS US LLC
fka LOUIS DREYFUS LLC

Signature: _____

Title: _____

Dated: _____

CONSENT DECREE - 16
No. 14-cv-00803-RAJ

1  PUGET SOUNDKEEPER ALLIANCE

2  Signature:

3

4  Title:        Executive Director

5  Dated:         7/13/2016

6

7  LOUIS DREYFUS COMPANY LLC
   fka LOUIS DREYFUS COMMODITIES LLC
8

9  Signature:
10

11 Title:      Vice President

12 Dated:      7/15/2016

13

14 LOUIS DREYFUS COMPANY NA LLC
   fka LOUIS DREYFUS COMMODITIES NA LLC
15

16 Signature:
17

18 Title:      Executive Vice President

19 Dated:      4/13/2016

20

21 LOUIS DREYFUS US LLC
   fka LOUIS DREYFUS LLC
22

23

24 Signature:

25 Title:

26 Dated:

27

28

29

   CONSENT DECREE - 16
   No. 14-cv-00803-RAJ

1 LOUIS DREYFUS COMPANY WASHINGTON LLC
fka LDC WASHINGTON LLC
2

3 Signature:

4 Title: Executive Vice President

5

6 Dated: 4/13/2016

7

8 LOUIS DREYFUS COMPANY SEATTLE EXPORT ELEVATOR LLC
fka LD COMMODITIES SEATTLE EXPORT ELEVATOR LLC
9

10 Signature:

11 Title: Vice President

12

13 Dated: 4/13/2016

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

CONSENT DECREE - 17
No. 14-cv-00803-RAJ

ATTACHMENT A

ROSE
FOUNDATION
for COMMUNITIES
and the ENVIRONMENT

WWW.ROSEFDN.ORG

1970 BROADWAY, SUITE 600, OAKLAND, CA 94612-2218
ROSE@ROSEFDN.ORG

OFFICE 510.658.0702
FAX: 510.658.0732

July 13, 2016

Thomas W. Swegle
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re: Puget Soundkeeper Alliance v. Louis Dreyfus Commodities et al (14-cv-00803-RAJ)

Dear Mr. Swegle,

This letter is intended to provide assurance that I have received the proposed Consent Decree between Puget Soundkeeper Alliance and Louis Dreyfus Commodities et al and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Louis Dreyfus Commodities et al as specified in the Consent Decree.

2) The Rose Foundation shall only use these Louis Dreyfus Commodities et al funds to improve or protect the water quality of Puget Sound, and shall disperse them through the Rose Foundation's Puget Sound Stewardship & Mitigation Fund, a grantmaking fund, which is wholly dedicated to supporting projects that benefit the water quality of Puget Sound. Since the location of the Louis Dreyfus Commodities facility is in Elliott Bay in Central Puget Sound, the Rose Foundation shall target the funds towards projects benefitting the water quality of Elliott Bay, Central Puget Sound and associated watersheds.

3) After the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

**Rose Foundation for Communities and the Environment**

The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

• Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Rose Foundation does not support lobbying activities that are prohibited by Section 501(c)(3) of the IRS Code, and no portion of the Louis Dreyfus Commodities et al funds shall be used to support any political lobbying activities whatsoever.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.

- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors. Grant applicants are required to submit written proposals, which must include, at a minimum, specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then makes recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require. Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little, Executive Director

## ATTACHMENT B

1. Until the the access pier and shipping pier have been modified to collect, manage, and convey all stormwater from its surface to an upland area of the facility, Louis Dreyfus Company Washington LLC must use a vacuum sweeper, capable of picking up particles down to the 10 micrometer size, on the piers by the next working day shift following the completion of loading of each vessel. After the pier modifications described above are complete, Louis Dreyfus Company Washington LLC will clean up grain spilled onto the pier if, in its judgment, such action is needed to prevent wind from blowing grain into Elliott Bay.

2. Before infiltrating stormwater collected from the access pier and shipping pier, Louis Dreyfus Company Washington LLC will determine that the drainage basins that drain to Catch Basin 2 and Catch Basin 3 infiltrate runoff at the rate of the design storm specified in the Stormwater Management Manual for Western Washington. If Louis Dreyfus Company Washington LLC is unable to make this determination, it will further reduce the potential for discharge as necessary so that both drainage basins meet this standard. If Louis Dreyfus Company Washington LLC installs an Underground Injection Control well to enhance infiltration, it will comply with applicable requirements of WAC 173-218.

3. Louis Dreyfus Company Washington LLC must inform all employees, contractors, and stevedores with any role on the piers about the prohibition on washing, pushing, or discarding grain and grain dust into Elliott Bay and the consequences for violating it before they begin work on the piers. Louis Dreyfus Company Washington LLC will immediately order work stopped if discharges of grain are observed, either in-person or on security cameras.

CONSENT DECREE - 19
No. 14-cv-00803-RAJ

**ATTACHMENT C**

Louis Dreyfus Company Washington LLC will incorporate the following provisions into

the grain terminal's SWPPP after the triggering event specified for each such provision:

1. **Triggering event: Modification of access pier and shipping pier to collect, manage, and convey all stormwater from its surface to an upland area of the facility for infiltration in accordance with the design submitted to Ecology, unless infiltration is technologically infeasible, is disapproved by Ecology or if the soil contamination investigation detailed below identifies contaminated soils at the selected infiltration area.**

Provision to be incorporated into SWPPP: Before infiltrating stormwater collected from

the access pier and shipping pier, Louis Dreyfus Company Washington LLC must prepare the

upland infiltration site to ensure, consistent with the Stormwater Management Manual for

Western Washington, it is capable of infiltrating the two piers' stormwater, in addition to any

other stormwater falling in the site's upland drainage area. Before commencing any infiltration

site work, Louis Dreyfus Company Washington LLC must investigate whether hydraulic or other

oils released in the rail yard have affected soil and/or groundwater in the infiltration area at

concentrations exceeding regulatory criteria. If contaminated soils or groundwater are found at

levels exceeding applicable criteria in the infiltration area, if infiltration of stormwater from the

piers is technologically infeasible, or if infiltration is disapproved by Ecology, Louis Dreyfus

Company Washington LLC will convey the piers' stormwater to sanitary sewer. These pier

modifications will include an impervious curb or other permanent barrier around the perimeter of

the piers to capture stormwater and spilled grain on the pier.

2. **Triggering event: Installation of one diagonal rubber belt plow on each of the return belts of Conveyors 14 and 15 between the shipping gallery and Tower 6, and installation of a limit switch next to each diagonal rubber belt plow approximately 1½ inches above the return belt.**

CONSENT DECREE - 20
No. 14-cv-00803-RAJ

Provision to be incorporated into SWPPP ("Conveyors 14 and 15 Modifications"): The limit switch installed next to the diagonal rubber belt plow on each of the return belts of Conveyors 14 and 15 between the shipping gallery and Tower 6 will be programmed to shut off the belt if contact with grain or other solid material on the belt triggers the actuator on the limit switch. In the event a limit switch is activated and a conveyor belt is shut off, Louis Dreyfus Company Washington LLC will visually inspect the belt(s) and remove any grain or grain dust that, in its judgment, could fall out of the grain conveyance system when the belt is restarted.

3. **Triggering event: Initial completion of process described below.**

Provision to be incorporated into SWPPP ("Quarterly Inspections"): Louis Dreyfus Company Washington LLC will inspect the floor under and walls surrounding Conveyors 14, 15, 16, and 17, beginning at the point where Conveyors 14 and 15 pass over the gate between Centennial Park and the access pier, and continuing through to the southern end of the shipping gallery. Louis Dreyfus Company Washington LLC will (1) fill any openings in the concrete floor under the conveyor system that are ¼-inch or larger in diameter, except for any opening that is part of the original or modified design or construction of the facility, such as the take-up at Tower 6; (2) close any gaps of ¼-inch or more between the metal siding of the housing and the concrete floor under the conveyor system; and (3) cover with steel plating the expansion joint at the shoreline support tower for the transfer gallery. Louis Dreyfus Company Washington LLC will repeat this process quarterly.

4. **Triggering event: Installation of limit switches at the pivot point on each of the five loading spouts at the grain terminal.**

Provision to be incorporated into SWPPP ("Pivot Point Limit Switches"): The limit switches on each of the five loading spouts will be programmed to shut off conveyor belts delivering grain to the loading spout on which the limit switches are installed when the angle of

CONSENT DECREE - 21
No. 14-cv-00803-RAJ

the spout is less than 35 degrees from horizontal. In the event a limit switch is activated and a conveyor belt is shut off, Louis Dreyfus Company Washington LLC will not restart the corresponding conveyor belt(s) if the loading spout(s) are not over a vessel.

5. **Triggering event: Installation of solid surface to cover grating on the west side of the shipping pier.**

Provision to be incorporated into SWPPP ("Grating Cover"): The solid surface covering the grating on the west side of the shipping pier will extend a minimum of two inches onto the existing solid surface on the shipping pier and will be sloped to promote drainage toward the eastern edge of the shipping pier.

6. **Triggering event: Completion of the triggering events in 2 through 5 above.**

Provision to be incorporated into SWPPP: If the Conveyor 14 and 15 Modifications, the Quarterly Inspections, the Pivot Point Limit Switches, and the Grating Cover are insufficient to prevent discharges of grain from Pier 86 to Elliott Bay, Louis Dreyfus Company Washington LLC will evaluate whether additional modifications are necessary and if, in its judgment, they are, will undertake such modifications. If the modifications require engineering, Louis Dreyfus Company Washington LLC will undertake such modifications in consultation with River Consulting or another qualified engineer.

CONSENT DECREE - 22
No. 14-cv-00803-RAJ